## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JAMES THOMAS**                                              **CIVIL ACTION**

**versus**                                                            **NO. 12-2818**

**N. BURL CAIN, WARDEN**                              **SECTION: "B" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, James Thomas, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On October 15, 1985, he was convicted of aggravated rape and first degree robbery under Louisiana law.[1]  On October 22, 1985, he was found to be a multiple offender and was sentenced as such to terms of life imprisonment on the aggravated rape conviction and forty years on the first degree robbery conviction.  It was ordered that those sentences be served

---

[1] State Rec., Vol. I of VII, minute entry dated October 15, 1985; State Rec., Vol. I of VII, jury verdict forms.

consecutively and without benefit of parole, probation, or suspension of sentence.[2]  On March 15, 2000, after petitioner was granted an out-of-time appeal, the Louisiana Fourth Circuit Court of Appeal affirmed his convictions but vacated his habitual offender adjudication and sentences.[3]  After a prolonged delay, petitioner was finally resentenced on August 10, 2009, to terms of life imprisonment on the aggravated rape conviction and forty years on the first degree robbery conviction.  It was ordered that those sentences be served concurrently and without benefit of parole, probation, or suspension of sentence.[4]

After unsuccessfully seeking post-conviction relief in the state courts, petitioner filed the instant application seeking federal *habeas corpus* relief.[5]  The state concedes that petitioner's application is timely filed.[6]

---

[2] State Rec., Vol. I of VII, minute entry dated October 22, 1985.

[3] State v. Thomas, No. 99-KA-0287 (La. App. 4th Cir. Mar. 15, 2000); State Rec., Vol. II of VII.

[4] State Rec., Vol. I of VII, transcript of August 10, 2009.

[5] Rec. Doc. 1.

[6] Rec. Doc. 11, pp. 1 and 8.  In its response, the states notes that some of petitioner's claims could perhaps be considered procedurally barred.  However, the state further notes that it is at least "arguable" that the state court decision finding the claims procedurally defaulted is erroneous, and, therefore, this Court may choose to simply address the claims on the merits.  See Rec. Doc. 11, pp. 13-15.  A federal court need not decide whether a claim is procedurally barred if the claim fails on the merits.  Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).  Considering the state's position and the fact that petitioner's claims clearly do not warrant relief, the Court accepts the state's invitation and will simply consider all of the claims on the merits.

<u>I.  Standards of Review</u>

The  Antiterrorism  and  Effective  Death  Penalty  Act  of  1996  ("AEDPA") comprehensively  overhauled  federal  *habeas corpus*  legislation,  including  28  U.S.C.  § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535

U.S. at 694.

        Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

        Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

<u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in <u>Williams</u> that an unreasonable application is different from an

incorrect one."   Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."),

cert. denied, 132 S.Ct. 1537 (2012).

      While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
>     If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

## II. Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> In the early morning hours of June 17, 1985, the victim, G.T., was working the 7:00 p.m. to 11:00 a.m. shift at a Time Saver convenience store. Thomas entered the store, retrieved a six-pack of beer, and placed it on the counter. As G.T. was ringing up the purchase, he went back to the beer section of the store. Assuming that Thomas wanted to purchase another item, G.T. walked toward the end of the counter and began replenishing sandwiches when Thomas came behind the counter with his hand underneath his shirt. He told G.T. that he had a gun and told her to open the register. As she turned to open the register, he grabbed her by the neck and held her in an armlock. While Thomas had G.T. in the armlock, he again ordered G.T. to open the register; however, the register jammed and would not open.
>
> As Thomas pulled G.T. to the second cash register, he started fondling her breasts. When the second cash register would not open, he then ordered her to open the safe. However, G.T. could not open the safe because it was on a time lock. Thinking G.T. was attempting to activate an alarm, he began beating her and then dragged her out of the store into a nearby alley. Thomas ripped her clothes, pushed her to the ground, and started beating her head on the ground and choking her neck. G.T. subsequently passed out. When she regained consciousness, she realized Thomas was raping her. Thomas also took the necklace from around her neck, the ring off of her finger and her watch off her wrist. He also took some money out of her pocket. He told her he was going to put her to sleep, but then he ran towards the back of the alley as if he was leaving. Within a few seconds, Thomas returned and ordered her to remain where she was until he left the alley. After Thomas fled, G.T. ran to Touro Infirmary, a nearby hospital. She tried to open the front door, but it was locked. She noticed a cabdriver whom she recognized and ran to his cab. The cab driver called the police and then drove by the Time Saver. When they arrived, they noticed a man in the store.
>
> Sergeant Charlton Hymel of the New Orleans Police Department testified he went to the Time Saver during the early morning hours to conduct a routine business check. When he entered the store he observed Thomas coming out the front door with three

bottles of vodka and a six-pack of beer in his hands. When Thomas spotted the officer, he turned around and walked back to the counter. Officer Hymel detained Thomas because he believed he was shoplifting. While Officer Hymel was detaining Thomas, he noticed a cab pull into the parking lot. He saw the cabdriver jump out waving his hands, but Officer Hymel could not understand what he was saying. Officer Hymel remained inside until Officers Premeaux and Hamilton arrived in another police car.

After the second police car arrived, the cab driver went inside the Time Saver and told the officers that the clerk of the Time Saver was in the back of his cab and she had been raped and robbed. G.T. exited the cab, came into the store, and identified Thomas as the man who had raped and robbed her. She also identified her jewelry and wallet, which had been found in Thomas' possession.

Officer Hymel noticed that G.T.'s blouse was torn and ragged. She had blood all over her mouth and her lips were swollen. She looked like she had been punched in the face. The cab driver went inside the Time Saver and picked up a smock-type coat usually worn by the clerks and took it out to G.T. to put on. Officer Hymel testified that he did not participate in the collection of evidence, and he did not find a weapon on Thomas.

Officer Hamilton and his partner, Officer Premeaux, searched Thomas and found the victim's jewelry, watch, wallet, and money in his pants pockets. Detective Hoyt of the Rape Unit was called to the scene. He took pictures of the alleyway where the rape occurred and also found semen stains in the same vicinity. Two white buttons that had been ripped from the jacket G.T. was wearing that night were also recovered from the alleyway; however, no weapon was recovered.

During cross-examination, Thomas admitted that he tried to take money from the cash register and also conceded to taking G.T.'s money, watch, and jewelry. However, he insisted that he took them from her while they were in the store. He denied dragging G.T. into the alley and raping her. He claimed that G.T. had agreed to engage in sex with him that night in return for $45. After they engaged in consensual sex in the back of the store, G.T. became angry because he had only $15. She then hit him, and they began fighting. He testified that G.T. left after he took her belongings. After G.T. took off running, he testified that he tried to open the cash register by himself, but he was unsuccessful. He denied having a gun that night or even telling G.T. that he had a gun. He also denied wearing an undershirt that night.

Thomas further testified that fifteen or twenty minutes after she left, G.T. returned and found him there with the police officers. He admitted that he had previously been convicted of attempted armed-robbery, attempted first-degree murder, and credit car fraud.[7]

### III.  Petitioner's Claims

### A.  Deficient Appeal

Petitioner's first claim is that his rights were violated because only an incomplete record was available for the court's review in the first direct appeal and because he was not represented by the same attorney on appeal as at trial.

With respect to the record, petitioner complains that the transcript failed to include all of the voir dire, the jury instructions, and the opening statements and closing arguments.[8]  While that allegation is accurate, it is of no moment for the following reasons.

If petitioner is contending that the federal constitution requires that every criminal defendant be provided with a complete verbatim transcript on appeal, he is clearly wrong.  Moore v. Wainwright, 633 F.2d 406, 408 (5th Cir. 1980); Lipton v. Cain, Civ. Action No. 96-2987, 2007 WL 2316725, at *8 (E.D. La. Aug. 8, 2007).  Rather, a violation occurs only if the record was

---

[7]  State v. Thomas, No. 99-KA-0287, at pp. 2-5 (La. App. 4th Cir. Mar. 15, 2000); State Rec., Vol. II of VII.

[8]  The Court notes that petitioner also makes reference to the fact that the record failed to include a transcript of the habitual offender adjudication and sentencing.  However, any claim regarding that missing transcript is moot, in that petitioner was already granted relief on that claim by the state courts.  Thomas, No. 99-KA-0287, at pp. 8-10; State Rec., Vol. II of VII.  The Court further notes that petitioner was resentenced on August 10, 2009.  If he is perhaps alleging that the 2009 proceeding was not transcribed in its entirety, that is simply untrue.  State Rec., Vol. I of VII, transcript of August 10, 2009.

inadequate for the purposes of the appeal.  See Mullen v. Blackburn, 808 F.2d 1143, 1146 (5th Cir. 1987); Schwander v. Blackburn, 750 F.2d 494, 497-98 (5th Cir. 1985).

Further, to prevail on a claim that the record was inadequate, a petitioner must prove that the missing portion of the transcript actually prejudiced his appeal in some manner.  See Mullen, 808 F.2d at 1146; McDonald v. Thaler, Civ. Action No. H-09-2767, 2010 WL 2640135, at *18 (S.D. Tex. June 30, 2010); Bozeman v. Cain, Civ. Action No. 09-8423, 2010 WL 2977393, at *4 (E.D. La. June 7, 2010), adopted, 2010 WL 2977402 (E.D. La. July 20, 2010).  Petitioner has made no such showing in this case.  On the contrary, the record was adequate for resolution of the claims that were actually asserted on appeal, and petitioner's contention that the untranscribed portions might have revealed additional errors which could have been asserted on appeal is nothing more than rank speculation.  As such, he has not met his burden to prove that relief is warranted.  See, e.g., Williams v. Cain, Civ. Action No. 05-0710, 2008 WL 3363562, at *26 (E.D. La. Aug. 8, 2006) ("To warrant federal habeas corpus relief on a claim that state court transcripts are unconstitutionally incomplete, the petitioner must support his claims with more than mere unsubstantiated, transparent speculation.").

As for the allegation that petitioner had a different attorney at trial than he had on appeal, he is correct on that point.  However, again, that fact is of no consequence.  While the Sixth Amendment requires that a criminal defendant have effective counsel on direct appeal, it simply does not require that the appeal be handled by his trial counsel.  In light of that fact, as well as the fact that petitioner has not shown that his representation on appeal was prejudiced in any manner whatsoever by the change in attorneys, he has again failed to establish that relief is warranted.

B.  Double Jeopardy

Petitioner next argues that his convictions violated the Double Jeopardy Clause.  The protection against double jeopardy is enshrined in the Fifth Amendment and made enforceable against the states through the Fourteenth Amendment.  Benton v. Maryland, 395 U.S. 784, 794 (1969); Rogers v. Lynaugh, 848 F.2d 606, 611 (5th Cir. 1988).  The United States Supreme Court has explained:

> That guarantee has been said to consist of three separate constitutional protections.  It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted), overruled in part on other grounds, Alabama v. Smith, 490 U.S. 794, 802-03 (1989); see also Department of Revenue v. Montana, 511 U.S. 767, 769 n.1 (1994).

To the extent that petitioner is arguing that the Double Jeopardy Clause was violated because he was convicted of two offenses arising from the same course of conduct, he is clearly wrong.  That simply is not the applicable test.  Under federal law, so long as the offenses in question were different, the fact that they arose out of the same course of conduct is immaterial.  See, e.g., United States v. Morgan, 437 Fed. App'x 354, 355-56 (5th Cir.), cert. denied, 132 S.Ct. 864 (2011); Johnson v. Terrell, No. 95-30339, 1995 WL 581839, at *1 (5th Cir. Sept. 6, 1995).  Rather, as the United States Fifth Circuit Court of Appeals has explained:

> We apply the Blockburger v. United States[, 284 U.S. 299 (1932),] test to determine whether two different statutes punish the same offense.  Blockburger requires us to compare the two statutes at issue and ask "whether each provision requires proof of an additional fact

which the other does not". If either statute contains no element not also found in the other statute, the statutes "fail" the <u>Blockburger</u> test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent". Two statutory offenses need not be identical to constitute the same offense for double jeopardy purposes. The <u>Blockburger</u> inquiry focuses on the statutory elements of the offenses, not on their application to the facts of a specific case before the court. Thus, the question is not whether *this* violation of [the first statute] also constituted a violation of [the second statute], but whether *all* violations of the former statute constitute violations of the latter.

<u>United States v. Singleton</u>, 16 F.3d 1419, 1422 (5th Cir. 1994) (emphasis in original) (footnotes omitted).

In the instant case, petitioner was convicted of both aggravated rape and first degree robbery. Those are clearly different offenses with different elements.[9] For example, aggravated rape requires proof of sexual intercourse, while first degree robbery does not. On the other hand, first degree robbery requires the taking of something of value, while aggravated rape does not. Because each offense required proof of additional element which the other did not, there clearly was no *federal* double jeopardy violation and relief should therefore be denied.

That said, this Court notes that *Louisiana* law provides independent protections from double jeopardy. La. Const. art. I, § 15; La.Code Crim. Proc. art. 596. However, this Court need not and does not reach the issue of whether petitioner's rights were violated under the state law protections against double jeopardy. Federal *habeas corpus* relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1983); <u>Brown v. Tanner</u>, Civ.

---

[9] Petitioner in fact concedes this point. Rec. Doc. 1, p. 39.

Action No. 11-1102, 2011 WL 4746563, at *4 (E.D. La. Aug. 29, 2011), <u>adopted</u>, 2011 WL

4746104 (E.D. La. Oct. 6, 2011).

<u>C.  Sufficiency of the Evidence</u>

Petitioner next claims that there was insufficient evidence to support his conviction

for first degree robbery.  In the last reasoned state court judgment addressing this claim, the

Louisiana First Circuit Court of Appeal denied the claim, holding:

> The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781 (1979); <u>State v. Rosiere</u>, 488 So. 2d 965 (La. 1986).  The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld.  <u>State v. Mussall</u>, 523 So. 2d 1305 (La. 1988).  The reviewing court is not called upon to decide whether it believes the witnesses unless the trier of fact's finding is contrary to the evidence.  <u>State v. Cashen</u>, 544 So. 2d 1268 (La. App. 4 Cir. 1989).  The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion.  <u>Id</u>.
>
> When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence.  La. R.S. 15:438.  The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events; however, this Court, when evaluating the evidence in the light most favorable to the prosecution, must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under <u>Jackson</u>. <u>State v. Davis</u>, 92-1623 (La. 5/23/94), 637 So. 2d 1012, <u>cert denied</u>, 513 U.S. 975, 115 S.Ct. 450 (1994).  This is not a separate test from <u>Jackson</u>, but is instead an evidentiary guideline for the jury when considering circumstantial evidence and this test facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. <u>State v. Wright</u>, 445 So.2d 1198

(La. 1984); <u>State v. Addison</u>, 94-2431 (La. App. 4 Cir. 11/30/95), 665 So. 2d 1224.

La. R.S. 14:64.1(A) defines first degree robbery as follows:

> First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by the use of force or intimidation, **when the offender leads the victim to reasonably believe he is armed with a dangerous weapon**. (Emphasis added)

Thomas argues that the State only proved he was guilty of simple robbery since the State did not show that G.T. reasonably believed that he was armed. According to Thomas, G.T. testified that she believed Thomas was armed because he had his hand under his shirt. Yet, he notes that she admitted her back was to him when he had his hand in her back. He also quotes from testimony wherein G.T. answered, "no sir" when asked if he ever told her he had a gun. Though G.T. testified that she believed that Thomas had a gun, Thomas argues G.T.'s belief was not reasonable, particularly since he had on a fishnet type shirt. He argues that G.T. did not testified [sic] that she saw a gun, considering that she should have been able to see a gun through a fishnet type shirt.

In order to support a conviction for first-degree robbery, the State must prove that the offender induced a subjective belief that he was armed with a dangerous weapon and the victim's belief was objectively reasonable under the circumstances. <u>State v. Fortune</u>, 608 So. 2d 148 (La. 1992); <u>State v. Ricks</u>, 93-1611 (La. App. 4 Cir. 5/26/94), 637 So. 2d 1239, <u>writ denied</u>, 94-1705 (La. 11/11/94), 644 So.2d 386. In <u>Fortune</u>, the Supreme Court stated:

> The statute [La. R.S. 14:64.1] has objective and subjective components. It requires the state to prove the offender induced a subjective belief in the victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances. The statute thus excludes unreasonable panic reactions by the victim but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first-

degree robbery or the lesser offense of simple robbery
in violation of La. R.S. 14:65.  (Citations omitted).

The trial court further stated that direct testimony by the victim that he believed the defendant was armed or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats may support a conviction for first degree robbery.  Fortune, 608 So. 2d at 149.

In Fortune, the Supreme Court vacated the defendant's conviction for first-degree robbery where the defendant approached two women and demanded their jewelry.  When one of the victims said, "No" and stepped back, the defendant then lunged at her and took her earrings and a necklace.  The other victim testified at trial that she thought the defendant was playing with the victim and that he had one hand underneath his shirt and the other on their chests.  The Supreme Court noted that the victim was not asked whether she believed that the defendant was armed and that the other witness treated the encounter as a joke; therefore, the evidence was not sufficient to support the conviction for first-degree robbery.  The Supreme Court further concluded that a rational trier of fact would have had no difficulty finding that the defendant committed the lesser-included offense of simple robbery.

The jury in the instant case apparently believed the testimony given by G.T. earlier when she testified on direct examination that when Thomas came behind the counter he stated that he had a gun.  Further, G.T. testified Thomas had on a blue undershirt, and she stated that she believed he had a gun.  Thus, we find that G.T.'s belief that Thomas had a gun appears reasonable under the circumstances.  Unlike the victim in Fortune, there is no question of anyone thinking Thomas was joking.  The fact that he immediately came behind the counter and grabbed her neck in an armlock further supports the fact that the victim honestly believed he had a weapon.  Because of the quickness and viciousness of the attack and the ensuing fight, the victim clearly had no time to carefully look to see if Thomas was lying or if he actually had a gun.  Hence, a rational trier of fact could have easily inferred that the victim allowed Thomas to rob her of her jewelry, watch, and money under the belief that he was armed with a dangerous weapon.  Viewing the evidence in the light most favorable to the prosecution, it appears that any rational trier of fact

could easily have found Thomas guilty of first-degree robbery beyond a reasonable doubt.  This assignment of error has no merit.[10]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that petitioner has made no such showing.

As correctly noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law

---

[10] Thomas, No. 99-KA-0287, at pp. 5-8; State Rec., Vol. II of VII.

is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.")  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011), cert. denied, 132 S.Ct. 1713 (2012); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S.Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

In the instant case, the elements of first degree robbery were clearly established through the testimony of the victim.  Generally, a victim's testimony is alone sufficient to support a conviction.  Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Crumholt v. Cain, Civ. Action No. 11-2543, 2011 WL 6329934, at *8 (E.D. La. Nov. 29, 2011), adopted, 2011 WL 6329868 (E.D. La. Dec. 19, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *26 (E.D. La. Oct. 29, 2009).  This includes a victim's testimony regarding his or her belief that the perpetrator was armed.  See, e.g., Coutee v. Warden, Louisiana State Penitentiary, Civ. Action No.1:11-CV-00409, 2011 WL 6845561, at *3-5 (W.D. La. Dec. 7, 2011), adopted, 2011 WL 6845160 (E.D. La. Dec. 29, 2011); King v. Cain, Civ. Action No. 10-1197, 2011 WL 3320714, at *10-12 (E.D. La. June 30, 2011), adopted, 2011 WL 3320631 (E.D. La. Aug. 1, 2011); Singleton v. Cain, Civ. Action No. 05-0388, 2006 WL 3589743, at *12-14 (E.D. La. Dec. 6, 2007).  Moreover, although petitioner disputes the credibility of the victim, witness credibility is an issue for the jury, not a federal *habeas* court.  Where a petitioner's insufficient evidence claim is based on the credibility of a witness, a federal *habeas* court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11-2725, 2012

WL 2564926, at *14 (E.D. La. Apr. 11, 2012), <u>adopted</u>, 2012 WL 2565025 (E.D. La. July 2, 2012); <u>Picou v. Cain</u>, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under these doubly-deferential standards of review which must be applied by this federal *habeas* court, the claim should be denied.

### D.  Resentencing

Lastly, petitioner claims that his rights were violated because his resentencing was unreasonably delayed. His legal basis for that claim is vague at best. However, he primarily cites state law in support of the claim. Again, to the extent that he is arguing that there was a violation of state law, that simply is not an issue for this Court. As previously noted, federal *habeas corpus* relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1983).

On the other hand, petitioner may be claiming that the delay violated federal constitutional law. Arguably, such a claim could be interpreted as one that he was deprived of his right to a speedy trial under the Sixth Amendment and/or his right to due process of law under the Fifth and Fourteenth Amendments. <u>See</u> <u>Gable v. Massey</u>, 566 F.2d 459, 462 (5th Cir. 1978). However, regardless of how the claim is interpreted, it has no merit.

In Gable, the United States Fifth Circuit Court of Appeals questioned whether the Sixth Amendment even applies in this context, noting: "We have great doubt that compliance with sentencing procedures are analogous to time limits for trials or retrials ...." Gable, 566 F.2d at 462 n.7; accord United States v. Sanders, 452 F.3d 572, 579 (6th Cir. 2006) ("Just as the right to a speedy trial does not attach until a criminal proceeding has been initiated and a defendant faces a real and immediate threat of conviction, so too does it cease to apply when the conviction becomes definitive. This occurs when the conviction is affirmed on direct appeal, if not sooner."). However, it was unnecessary for the Fifth Circuit to decide that issue in Gable because the petitioner alleged no prejudice from the delay, the court found none, and the petitioner "did not receive one extra day of confinement because of the delay." Gable, 566 F.2d at 462. Because the same is true here,[11] the Sixth Amendment likewise would not serve as a basis for relief in the instant case in the unlikely event it was found to be applicable.

Even if the Sixth Amendment's speedy trial protections do not apply, "[a] delay in resentencing, however, can still run afoul of due process guarantees. Just as the government cannot unduly prolong an investigation before bringing an indictment due process also imposes an outer limit on the government's window of opportunity to resentence a defendant following an appeal." Sanders, 452 F.3d at 580 (citation omitted). That said, there was no due process violation here for the following reasons.

---

[11] Indeed, as the state correctly notes, regardless of when the sentencing was held, petitioner faced the same mandatory term of life imprisonment based on his conviction for aggravated rape.

In <u>Sanders</u>, the Sixth Circuit held that "after a conviction has been affirmed on appeal, and a case is remanded solely for resentencing, the question of whether any delay in imposing the sentence violates the defendant's right to due process can be answered by looking to: (1) the reasons for the delay; and (2) what prejudice the defendant has suffered as a result of the delay." <u>Id</u>. In the instant case, the delay was clearly egregious; however, it apparently resulted from negligence and/or ineptitude rather than a malicious intent. Further, and most importantly, petitioner was not prejudiced in any way whatsoever by the delay. There is simply no reason to believe that the sentences imposed would have differed in any way had they being imposed in a more timely manner, and the resulting time petitioner will spend incarcerated is unchanged. Accordingly, his claim fails. <u>See</u> <u>United States v. Catoggio</u>, 698 F.3d 64, 69 (2nd Cir. 2012) (finding that the defendant could not "make out any constitutional or statutory claim based on the eight-year delay in resentencing because he did not suffer prejudice").

Lastly, the Court notes that petitioner also complains that he was not physically present with counsel in the courtroom at the resentencing hearing; rather, his counsel was present in court and petitioner appeared via videoconference from prison.[12]  It is unclear whether petitioner means to assert this complaint as an independent ground for relief; however, even if he does, relief is not warranted for the following reasons.

It is beyond cavil that one of the most basic rights guaranteed by the federal constitution is "the accused's right to be present in the courtroom at every stage of his trial." <u>Illinois v. Allen</u>, 397 U.S. 337, 338 (1970); <u>see also</u> <u>Faretta v. California</u>, 422 U.S. 806, 819 n.15 (1975)

---

[12]  State Rec., Vol. I of VII, transcript of August 10, 2009.

("[A]n accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings ...."). The issue here, however, is whether actual physical presence is required for sentencing or whether, instead, presence through electronic means suffices.

In federal criminal proceedings, actual physical presence is required at sentencing pursuant to Rule 43 of the Federal Rules of Criminal Procedure.  United States v. Navarro, 169 F.3d 228, 235-39 (5th Cir. 1999).  Obviously, however, the Federal Rules of Criminal Procedure do not apply to state criminal proceedings.  Therefore, a state prisoner would be entitled to federal *habeas corpus* relief in this instance only if actual physical presence is also required by the United States Constitution.

In a writ application filed with the Louisiana Supreme Court in Case No. 2009-KH-2505,[13] petitioner argued that his rights were violated when he appeared for sentencing via electronic means with his counsel physically present in court.  The Louisiana Supreme Court denied relief.[14] This federal *habeas* court may therefore grant relief only if petitioner can show that the state court decision denying his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*."  28 U.S.C. § 2254(d)(1) (emphasis added).

In the instant case, petitioner does not identify a United States Supreme Court ruling which holds that a sentencing proceeding held in this manner in unconstitutional, and this Court is

---

[13]  State Rec., Vol. VI of VII, writ application.

[14]  State *ex rel.* Thomas v. State, 95 So.3d 1063 (La. 2012) (No. 2009-KH-2505); State Rec., Vol. VI of VII.

aware of no such ruling.  Where, as here, the jurisprudence of the United States Supreme Court does not clearly support a petitioner's claim, it cannot be said that a state court ruling denying the claim impermissibly ran afoul of "clearly established Federal law" for purposes of § 2254(d)(1).  See Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law.  Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized."); Wilson v. Cain, 641 F.3d 96, 100 (5th Cir. 2011); Gilson v. Leblanc, Civ. Action No. 08-4833, 2009 WL 2046166, at *3 (E.D. La. July 14, 2009).  Accordingly, under the deferential standards of review mandated by the AEDPA, this claim should be denied.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by James Thomas be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[15]

---

[15] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

New Orleans, Louisiana, this eighth day of April, 2013.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**